Mr. Oscar Stilley Attorney at Law 7103 Racetrack Loop Fort Smith, AR 72916
Dear Mr. Stilley:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. You have previously submitted ballot titles for various similar measures. See Ark. Ops. Att'y Gen. Nos. 2005-212, 2003-348, 2001-391, 2001-211, 2001-210, 2000-020, 1999-416, 99-261, 99-200 and 97-333. I am issuing this opinion solely to consider certifying a ballot title and popular name for the amended text of your measure. Given that this office has no authority to consider the merits of any measure, neither certification nor rejection of your proposed popular name and ballot title reflects my view regarding the substance of your proposal.
Your proposed popular name and ballot title are as follows:
 Popular Name AN AMENDMENT REQUIRING VOTER APPROVAL FOR TAX INCREASES, ABOLISHING MINIMUM MILLAGE REQUIREMENTS, AND PHASING OUT ARKANSAS INCOME TAXES
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION PROVIDING THAT THE STATE AND ALL LOCAL ENTITIES HAVING THE POWER TO TAX MUST HAVE VOTER APPROVAL IN ADVANCE FOR ANY NEW TAX, ANY NEW TAX, RATE INCREASE FOR AN EXISTING TAX, MILL LEVY ABOVE THAT FOR THE PRIOR YEAR, RATIO OF ASSESSED VALUE TO APPRAISED VALUE, EXTENSION OF AN EXPIRING TAX, OR THE EXTENSION OF ANY TAX TO ONE OR MORE NEW SUBJECTS OF TAXATION; ABOLISHING AND PROHIBITING ALL MINIMUM MILLAGE REQUIREMENTS WITHIN THIS STATE, OR REQUIREMENTS TO MAINTAIN ANY PARTICULAR LEVEL OF EDUCATION FUNDING, DERIVED FROM ANY ARKANSAS STATUTE OR CONSTITUTIONAL PROVISION, OR ANY INTERPRETATION THEREOF; PROVIDING THAT THE EXISTENCE AND AMOUNT OF FUNDING FOR PUBLIC EDUCATION SHALL BE DEEMED SOLELY A POLITICAL QUESTION, TO BE DECIDED BY THE ARKANSAS GENERAL ASSEMBLY FOR STATE FUNDING, AND BY THE VOTERS FOR LOCAL FUNDING; REQUIRING THE STATE TO DISTRIBUTE FUNDS FOR PRIMARY AND SECONDARY EDUCATION EQUALLY ON A PER PUPIL BASIS, WITH RESPECT TO ALL STUDENTS OF A GIVEN GRADE LEVEL, EXCEPT AS OTHERWISE REQUIRED BY LAW SUPERIOR TO THIS CONSTITUTION, AND EXCEPT THAT THE GENERAL ASSEMBLY MAY DECLINE TO PROVIDE ALL OR PART OF THE FUNDING FOR STUDENTS IN CIRCUMSTANCES IN WHICH THE GENERAL ASSEMBLY FINDS THAT SUCH REDUCTION IS NECESSARY AND PROPER AND NOT PROHIBITED BY LAW SUPERIOR TO THIS CONSTITUTION; AUTHORIZING THE USE OF THE INITIATIVE PROCESS TO PROPOSE INCREASES OR DECREASES IN SCHOOL DISTRICT MILLAGE RATES, UPON THE SIGNATURES OF TEN PERCENT (10%) OF THE WHOLE NUMBER OF ELECTORS CASTING BALLOTS IN THE MOST RECENT SCHOOL ELECTION, PURSUANT TO AMENDMENT 7 AND IMPLEMENTING LEGISLATION; PHASING OUT THE TAXES UPON PERSONAL AND CORPORATE INCOMES NOW LEVIED BY THE STATE OF ARKANSAS; (THIS MAY CAUSE THE STATE TO HAVE SMALLER INCREASES IN MONEY FOR PROGRAMS AND SERVICES THAN WOULD OTHERWISE BE THE CASE); PROVIDING THAT THE INCOME TAX SHALL BE PHASED OUT BY ALLOWING THE STATE FOR THE TAXABLE YEAR 2007, AND ALL SUBSEQUENT YEARS, TO COLLECT AND RETAIN STATE INCOME TAXES WHICH TOGETHER WITH STATE SALES AND USE TAXES WILL GENERATE NET REVENUE EQUAL TO THE NET REVENUE FROM INCOME TAXES AND STATE SALES AND USE TAXES COLLECTED FOR THE YEAR 2006 (HEREINAFTER SOMETIMES BASE YEAR REVENUE); PROVIDING THAT FOR THE TAXABLE YEAR 2007 AND ALL SUBSEQUENT YEARS, ANY STATE INCOME TAX REVENUES NOT REQUIRED TO PROVIDE THE STATE OF ARKANSAS WITH ANNUAL REVENUES EQUAL TO BASE YEAR REVENUE SHALL BE DIVIDED AMONG AND REFUNDED TO ALL PERSONAL AND CORPORATE INCOME TAX PAYERS IN THE STATE OF ARKANSAS, PRO RATA ACCORDING TO THEIR RESPECTIVE TAX PAYMENTS, BY THE CHIEF FISCAL OFFICER OF THE STATE, IN THE SECOND YEAR FOLLOWING THE TAXABLE YEAR; PROVIDING THAT ALL CALCULATIONS OF INCOME TAX RECEIPTS SHALL BE BASED UPON MONEY ACTUALLY COLLECTED IN THE CALENDAR YEAR FOLLOWING THE TAXABLE YEAR, AND REFUNDS SHALL BE MADE ONLY TO PERSONS WHO ACTUALLY PAID TAXES DURING THAT YEAR; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING AMENDMENTS; PROVIDING THAT THIS AMENDMENT IS SELF-EXECUTING AND WILL TAKE EFFECT THE FIRST DAY OF THE YEAR FOLLOWING VOTER APPROVAL; REQUIRING THE GENERAL ASSEMBLY, AND ANY AND ALL STATE OR LOCAL RULE MAKING AUTHORITIES, TO MAKE ALL OTHER AND FURTHER LAWS AND REGULATIONS NECESSARY TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT, IN FULL COMPLIANCE WITH THE UNITED STATES CONSTITUTION, AND WITHOUT IMPAIRMENT OF THE SECURITY OF BONDS SECURED BY TAXES; AND FOR OTHER PURPOSES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. §7-9-107(b).
Among these ambiguities are the following:
1. Section 1 of your proposed amendment provides:
 Henceforth, the state and all local taxing entities having the power to tax must have voter approval in advance for any new tax, mill levy above that for the prior year, ratio of assessed value to appraised value, extension of an expiring tax, or any extension of any tax to one or more new subjects of taxation.
In my comments on a similar provision contained in your most recent previous submission, I remarked that it is unclear what you mean by the term "local taxing entities." Ark. Op. Att'y Gen. No. 2005-212. As rephrased in your current submission, it remains unclear if you intend to include in this term an assessing entity like an improvement district, as you have attempted to do before — see, e.g., Ark. Op. Att'y Gen. No.2001-391 — or whether you mean to use the term more narrowly. If we merely repeat your term in the ballot title, the voters might be confused as to its scope.
It is further unclear precisely what you mean by requiring "voter approval . . . for any . . . ratio of assessed value to appraised value." Do you mean to require annual voter approval of the ratio of assessed value to appraised value for purposes of taxation, which currently stands at 20%, regardless of whether this ratio would change from the previous year; or, alternatively, as you apparently intended in your most recent previous submission, do you mean to require voter approval only if this ratio increases; or, again alternatively, do you mean to require voter approval whenever this ratio changes in any way? In this regard, I will note that all of the items recited in Section 1 of your proposed amendment except, possibly, the "ratio of assessed value to appraised value" require voter approval of any higher rate of taxation, whether in the form of a new tax or an increase or extension of an existing tax. As Section 1 is drafted, I am unable to summarize for the voter whether you intend to require annual voter approval of the ratio of assessed value to appraised value for purposes of taxation irrespective of whether this ratio would change from the previous year.
2. Section 2 of your proposed amendment provides:
 All minimum millage requirements within this state, or requirements to maintain any particular level of education funding, derived from any Arkansas statute or constitutional provision, or any interpretation thereof, are hereby abolished and prohibited. The existence and amount of funding for public education shall be deemed solely a political question, to be decided by the Arkansas General Assembly for state funding, and by the voters for local funding. The Arkansas General Assembly shall distribute funds for primary and secondary education equally on a per pupil basis, with respect to all students of a given grade level, except as otherwise required by law superior to this constitution, and except that the General Assembly may decline to provide all or part of the funding for students in circumstances in which the General Assembly finds that such reduction is necessary and proper and not prohibited by law superior to this constitution. The voters of school districts are hereby authorized to initiate increases or decreases in school district millage rates, by the initiative process, upon the signatures of ten percent (10%) of the whole number of electors casting ballots in the most recent school election, pursuant to Arkansas Constitution Amendment 7 and implementing legislation.
In assessing this provision in your previous submission, I observed that it was unclear precisely what terms of the current constitution you intended to repeal. It would appear that you intend to repeal Ark. Const. art. 14, § 1, which obligates the state to maintain a "general, suitable and efficient system of free public schools," but it is unclear what other portions of article 14 your proposed amendment would repeal by implication. As a general proposition, repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). Article 14 of the current constitution contains elaborate provisions relating to the funding of public education in the state. Without clarification as to what constitutional provisions you intend to repeal, I cannot adequately summarize for the voters the substance of your proposed amendment.
You have added to your previous submission a sentence characterizing "[t]he existence and amount of funding for public education" as "solely a political question," to be resolved exclusively by the General Assembly with respect to state funding and local voters with respect to local funding. To the extent that this provision is intended as a blanket proscription against adjudicating any issues relating to school funding, it implicates the supremacy clause of the United States Constitution, U.S. Const, art. VI, cl. 2, which declares the supremacy of federal law over state law in the event of a conflict. To illustrate the potential problems arising from this provision, if the General Assembly were to enact legislation giving rise to an equal protection claim under U.S. Const. amend. 14, an aggrieved plaintiff might be inclined to assert his claim under 42 U.S.C. § 1983, which affords any individual a remedy for the deprivation under color of state law of any right established under federal law. As a matter of preemptive federal law, a § 1983 action may be brought in either federal or state court.[1] Patsy v. Board ofRegents of Florida, 457 U.S. 496, 506-07 (1982). It follows that any state constitutional provision declaring the issue of school funding a non-justiciable "political question" would be preempted whenever a plaintiff asserts a violation of federal law, meaning that the issue might be raised in either state or federal court notwithstanding any state constitutional provision declaring otherwise. See also Testa v. Katt,330 U.S. 386, 393 ("[A] state court cannot `refuse to enforce the right arising from the law of the United States because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers.' Minneapolis St. L.R. Co. v. Bombolis,241 U.S. 211, 222 [1916]."). Because the text of your proposed amendment may mislead voters into believing that no such cases could be adjudicated, I am unable accurately to summarize its substance in a ballot title.
Section 2 of your proposed amendment is further ambiguous in providing that the voters of a school district may by initiative increase or decreases millage rates upon obtaining signatures equaling 10% of the "electors casting ballots in the most recent school election, pursuant to Arkansas Constitution Amendment 7 and implementing legislation." As I noted in response to your most recent previous submission, Amendment 7 does not apply to school district elections. Opinion No. 2005-112. It is thus misleading to suggest that the initiative process anticipated in your proposed amendment would proceed "pursuant to Amendment 7." Even assuming you only intend the initiative process described in your proposed amendment to track the process set forth in Amendment 7 — a conclusion that is not apparent on the face of your submission — Amendment 7 fails to provide guidance relating to the certification of signatures in certain situations. With respect to local petitions, Ark. Const. art 5, § 1, which incorporates the provisions of Amendment 7, provides in pertinent part:
The sufficiency of all local petitions shall be decided in the first instance by the county clerk or the city clerk as the case may be, subject to review by the chancery [now circuit] court.
For certain school districts, this provision provides no guidance regarding the procedure for determining the sufficiency of a petition. For instance, some districts embrace territory in more than one county and more than one municipality. Your proposed amendment fails to specify who would determine the sufficiency of initiative petitions in such districts, rendering it impossible for me to summarize your proposal in a ballot title.[2]
3. Section 3 of your proposed amendment, captioned "PHASE OUT OF STATE INCOME TAX ON PERSONAL AND CORPORATE INCOMES" provides:
 (A) The taxes upon personal and corporate income now levied by the State of Arkansas shall be phased out as follows. The State may for the taxable year 2007, and all subsequent years, collect and retain state income taxes which together with state sales and use taxes will generate net revenue equal to the net revenue from income taxes and state sales and use taxes collected for the year 2006 (hereinafter sometimes base year revenue).
 1) For the taxable year 2007 and all subsequent years, any state income tax revenues not required to provide the State of Arkansas with annual revenues equal to base year revenue shall be divided among and refunded to all personal and corporate income tax payers in the State of Arkansas, pro rata according to their respective tax payments. All calculations and refunds shall be made by the chief fiscal officer of the state in the second year following the taxable year.
 2) All calculations of income tax receipts shall be calculated based upon money actually collected in the calendar year following the taxable year, and refunds shall be made only to persons who actually paid taxes during that year.
Section 3 of your proposed amendment is ambiguous in that it is far from established under the terms of your submission that income taxation will indeed be "phased out," as the text and the caption of this provision suggest. Your current submission provides that the sum total of income, sales and use tax revenues commencing in tax year 2007 may not exceed the sum total of such taxes in tax year 2006. Capping potential tax revenues in this manner in no way ensures that income taxation will be "phased out" over time. Any such "phase out" would result only if the sum total of sales and use tax revenues in the tax years beginning in 2007 would invariably increase, thus decreasing the permissible income taxation over time. Although this result may occur, it is by no means guaranteed to do so. Indeed, given the possibility that sales and use tax revenues might drop in any given tax year, the possibility exists that the legislature might actually increase income taxes in that tax year up to a point that achieves parity with tax year 2006 revenues. Given that this possibility is not acknowledged in the text of your proposed amendment, I am unable accurately to summarize its substance in a ballot title.
In Opinion No. 2005-212, I noted that your previous version of Section 3 failed to address the "logistical complexities" attending any effort to ensure that current-year tax revenues not exceed revenues realized in tax year 2006. I will not here repeat the various considerations I itemized in my previous opinion. However, given the numerous practical difficulties that would arise in implementing your proposed amendment, I feel obliged to question your representation in Section 4 that your proposed amendment would "to the extent possible be self-executing." I consider this representation inconsistent with what I believe would be the practical result that the legislature would need to undertake a daunting effort to implement the tax regime you propose. As drafted, your proposed amendment fails to acknowledge the significant legislative burden that its enactment would entail, rendering it impossible for me to summarize this effect in a ballot title.
Your current submission differs from its immediate predecessor in that you now indicate that "the chief fiscal officer of the state" will make all pertinent calculations and provide refunds. However, you continue to leave unaddressed how the pertinent calculations will be made, and you have left unchanged relevant portions of your previous Section 4, including the contradictory suggestions that, on the one hand, your proposed amendment will be largely self-executing and that, on the other, the General Assembly and local authorities will make any laws necessary to the enforcement of your proposed amendment. I am consequently still unable to summarize the effect of your measure to the electorate.
It is further unclear how your proposed amendment would impact currently secured bonded indebtedness. You indicate in Section 4 of your submission that the General Assembly will be required to enact legislation "to prevent the impairment of the security of holders of any bonds lawfully secured by taxes." However, it is unclear whether this directive can be reconciled with the unequivocal cap on taxation mandated in other sections of your proposed amendment. I am accordingly unable to summarize your proposed treatment of bonded indebtedness in a ballot title. The specific procedures to be adopted in order to ensure that the bondholders' interests are protected may be of a nature that might give voters "serious ground for reflection," thus triggering a requirement of disclosure in the ballot title under the standard set forth in Bailey v.McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994)]. I cannot make such disclosure in a ballot title unless the text of your proposed amendment specifies the nature of the protection of bondholders' interests.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB:cyh
[1] With respect to the substance of a claim that would otherwise not be justiciable under state law, the U.S. Supreme Court has declared: "[A] state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state . . . law would thwart the congressional remedy, see Martinez v. California,444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980)." Felder v.Casey, 487 U.S. 131, 139 (1988).
[2] I appreciate that Section 4 of your proposed amendment charges the General Assembly with the duty "to make all other and further laws and regulations necessary to the enforcement of this Constitutional Amendment." However, the legislature would appear to be constrained in this duty by what would upon approval be the constitutional directive that the certification procedure be imposed "pursuant to Amendment 7."